708 So.2d 740 (1997)
Louise GUIDRY, Plaintiff-Appellant,
v.
Cheryl L. NEU, et al., Defendants-Appellees.
No. 97-810.
Court of Appeal of Louisiana, Third Circuit.
December 10, 1997.
Rehearing Denied February 25, 1998.
*741 Clarence Horace Thornton, Jr., Baton Rouge, for Louise Guidry.
Marc W. Judice, Lafayette, for Cheryl L. Neu, et al.
Before THIBODEAUX, AMY and SULLIVAN, JJ.
THIBODEAUX, Judge.
This is a medical malpractice suit in which Louise Guidry sued Dr. Cheryl L. Neu, alleging a lack of informed consent. The basis of plaintiff's cause of action is Dr. Neu's alleged failure to disclose the risk of endophthalmitis prior to eye surgery. Due to complications arising out of the surgery, the plaintiff, Ms. Guidry, sustained a loss of vision in her right eye.
Ms. Guidry appeals the trial court judgment granting summary judgment in favor of Dr. Neu and her insurer, Louisiana Medical Mutual Insurance Company ("LAMMICO").
Based on the following reasons, we find there are issues of material fact which preclude the granting of summary judgment in favor of the defendant. Accordingly, the judgment of the trial court is reversed and the matter is remanded for further proceedings.
I.
ISSUES
1. Whether the trial court erred in granting defendant's motion for summary judgment finding that no issue of material fact exists as to whether the defendant, Dr. Neu, obtained the informed medical consent of the plaintiff.
II.
FACTS
On January 10, 1994, Dr. Cheryl Neu performed surgery upon the plaintiff, Ms. Louise Guidry, for the purpose of removing a cataract from her right eye. Prior to the operation, Ms. Guidry signed two medical consent forms on the 7th and 10th of January, 1994. On January 14, 1994, the plaintiff *742 returned to Dr. Neu's office for a follow-up examination. During this visit, Ms. Guidry complained of pain in her right eye. Upon further examination, Dr. Neu discovered that the plaintiff's cornea was cloudy and swollen and a layer of pus had formed in the anterior chamber. Acting upon the belief that Ms. Guidry had possibly developed endophthalmitis in her eye, Dr. Neu referred her to Dr. Frank J. Culotta, a retinal specialist.
Later, on January 14, 1994, Dr. Culotta examined the plaintiff's eye and diagnosed the condition as acute bacterial endophthalmitis. Immediately thereafter, Dr. Culotta admitted her to the hospital for surgery. During the surgery, Dr. Culotta also discovered and treated a localized retinal detachment in the plaintiff's right eye. After the surgery, the plaintiff remained in the hospital and continued to experience inflammation in her right eye.
On January 19, 1994, Dr. Culotta performed a second surgical procedure on the plaintiff's eye. Ms. Guidry was discharged from the hospital on January 21, 1994. Thereafter, she continued to complain of pain and inflammation in her right eye. Ultimately, she sustained a loss of vision in the eye.
Pursuant to La.R.S. 40:1299.47, Ms. Guidry filed a complaint with a Medical Review Panel. On April 9, 1996, the Medical Review Panel held that the evidence was insufficient to support a finding that the defendant, Cheryl Neu, failed to exercise the appropriate standard of care.
On July 8, 1996, Ms. Guidry filed a medical malpractice suit against Dr. Cheryl L. Neu and her insurer, LAMMICO, alleging that defendant failed to obtain informed medical consent. The plaintiff asserted that she was unable to read the "fine print" on the medical consent forms because of her poor eyesight. Due to her alleged incapacity to read the forms, the plaintiff contends that she was not fully apprised about the risks associated with the cataract surgery. She also alleges that the defendant failed to inform her of the specific risk of endophthalmitis, a bacterial infection which led to the plaintiff's injury.
The defendant answered plaintiff's petition and subsequently filed a motion for summary judgment seeking the dismissal of the medical malpractice claim. The plaintiff responded by filing a cross-motion for partial summary judgment seeking the imposition of medical liability upon the defendant. The trial court granted the defendant's motion for summary judgment and denied the imposition of medical liability upon the defendant. The trial court dismissed all of the plaintiff's claims except for the issue of informed consent.
The defendant subsequently filed a second motion for summary judgment. The trial court granted the defendant's motion for summary judgment, finding that there was no issue of material fact that the defendant failed to disclose all known risks associated with the proposed surgery. The plaintiff appeals this judgment of the trial court.

III.

LAW & DISCUSSION

Standard of Review
As a general principle, "[a]ppellate courts review summary judgments de novo, under the same criteria which governs the district court's consideration of the appropriateness of summary judgment." Potter v. First Federal Savings & Loan Ass'n of Scotlandville, 615 So.2d 318, 325 (La.1993), citing Schroeder v. Board of Sup'rs of Louisiana State University, 591 So.2d 342, 345 (La.1991). Thus, we shall conduct a de novo review of the trial record in this suit to determine if summary judgment was properly granted.

Summary Judgment
With regard to summary judgment, La. Code Civ.P. art. 966©[1] provides:
(1) After adequate discovery or after a case is set for trial, a motion which shows that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law shall be granted against an adverse party who fails to make a showing sufficient to establish the existence of proof of an element essential to his claim, action, or defense and on *743 which he will bear the burden of proof at trial.
(2) The burden of proof remains with the movant. However, if the movant will not bear the burden of proof at trial on the matter that is before the court on the motion for summary judgment, the movant's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court that there is an absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. Thereafter, if the adverse party fails to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact.
Moreover, in Hayes v. Autin, 96-287 (La. App. 3 Cir. 12/26/96), 685 So.2d 691, writ denied, 97-0281 (La.3/14/97), 690 So.2d 41, this court analyzed the consequential effect of the 1996 amendments to La.Code Civ.P. art. 966. The court held that "[a] motion for summary judgment is properly granted only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law." Hayes, 96-287 at p. 5, 685 So.2d at 694.
The court determined that the burden of proof remains with the mover to show that no material issues of fact exists. Id. The mover must present supportive evidence that the motion for summary judgment is warranted. Id. The burden, however, shifts to the non-moving party once the mover has made a prima facie showing that the motion should be granted. Id.

Informed Consent
In this suit, the plaintiff contends that the trial court erred in granting summary judgment in favor of the defendant. The plaintiff asserts there are issues of material fact of whether Dr. Neu obtained the informed consent of the plaintiff. The existence of these issues of material fact precludes the granting of summary judgment.
The defendant argues that the two consent forms signed by plaintiff informed her of all known risks associated with the proposed surgery. The defendant asserts that the consent forms disclosed all the risks and possible complications involved with the operation. The consent forms contain a statement that Dr. Neu had fully discussed these risks with Ms. Guidry. Dr. Neu contends that Ms. Guidry's signature on the consent forms establishes the presumption that the plaintiff understood the risks involved with her proposed surgery. Relying on the validity of this presumption, the defendant alleges that the plaintiff's informed consent was properly obtained in accordance with La.R.S. 40:1299.40.
Conversely, the plaintiff contends that the risk of endophthalmitis was not listed as a potential risk in either of the consent forms. The signed consent forms are, therefore, invalid and ineffective. The plaintiff further asserts that defendant did not inform her of the risk of endophthalmitis at any point prior to the surgery. Thus, there are issues of material fact of whether or not the defendant validly obtained the informed consent of plaintiff. We agree.
In Hondroulis v. Schuhmacher, 553 So.2d 398 (La.1988), the Louisiana Supreme Court held that a signed consent form, prepared in accordance with La.R.S. 40:1299.40, establishes a rebuttable presumption of informed consent. The court also held that this presumption could be rebutted by proof that the patient's consent was induced by the physician's misrepresentation of the material facts. Id.
To successfully controvert the presumption of informed consent, a plaintiff must prove:
1) The existence of a material risk which the physician had a duty to disclose;
2) The failure of the physician to disclose the material risk to the patient; and
3) A causal connection between the physician's failure to disclose information associated with the risk and the actual risk sustained by the patient.
*744 Id.[2] Applying the Hondroulis test, we must initially determine whether endophthalmitis is a material risk.
The test for materiality involves a two-prong analysis. Id. The first prong entails an examination of the existence and nature of the risk and the probability of its occurrence. Id. The second prong of the analysis is a determination by the trier of fact of whether the risk is the type of harm which a reasonable patient would consider in deciding on medical treatment. Id. The trier of fact must determine whether a reasonable person in the plaintiff's position would attach significance to the specific risk. Yahn v. Folse, 639 So.2d 261 (La.App. 2 Cir.1993), writ denied, 94-1276 (La.9/2/94), 643 So.2d 145.
In his deposition, Dr. Culotta, a retinal specialist, testified that he routinely discusses the risk of endophthalmitis with his patients prior to cataract surgery. He opined that the risk of endophthalmitis is the type of risk which should be disclosed to the patient prior to surgery. He stated that endophthalmitis occurs in less than one in one thousand cases. Dr. Culotta testified that endophthalmitis is a bacterial infection which causes damage to the nerve fibers in the retinal layer of the eye. He also stated that endophthalmitis generally causes a loss of vision in the eye.
As a general principle, "a risk is material when a reasonable person in what the doctor knows or should know to be the patient's position, would be likely to attach significance to the risk or cluster of risks in deciding whether or not to forego the proposed therapy." Hondroulis, 553 So.2d at 412. The plaintiff testified that she would have foregone the cataract surgery if she had been informed of the risk of endophthalmitis and its effects. Based on the trial record and the expert testimony of Dr. Culotta, we find that endophthalmitis is a material risk.
La.R.S. 40:1299.40, governing written consent to medical treatment, in pertinent part, provides:
A. (1) Notwithstanding any other law to the contrary, written consent to medical treatment means a consent in writing to any medical or surgical procedure or course of procedures which: sets forth in general terms the nature and purpose of the procedure or procedures, together with the known risks, if any, of death, brain damage, quadriplegia, paraplegia, the loss or loss of function of any organ or limb, of disfiguring scars associated with such procedure or procedures; acknowledges that such disclosure of information has been made and that all questions asked about the procedure or procedures have been answered in a satisfactory manner; and is signed by the patient for whom the procedure is to be performed, or if the patient for any reason lacks legal capacity to consent by a person who has legal authority to consent on behalf of such patient in such circumstances. Such consent shall be presumed to be valid and effective, in the absence of proof that execution of the consent was induced by misrepresentation of material facts.
Under La.R.S. 40:1299.40, all known risks of loss of a function of an organ must be disclosed in the medical consent form. If all such risks are disclosed, the consent form is presumptively valid and effective, absent any proof that the consent was induced by a misrepresentation of material facts. La.R.S. 40:1299.40.
Based on our interpretation of La. R.S. 40:1299.40, all risks of loss of a function of the eye should have been disclosed in the consent forms to maintain the validity of such forms. In this case, however, the risk of endophthalmitis was not disclosed in the consent forms signed by the plaintiff. The defendant argues that the risks of "loss of function of an organ" and "loss of sight," as stated in consent forms, encompass the risk of endophthalmitis. Therefore, the signed consent forms are presumptively valid. The defendant's argument is without merit.
The presumption of validity and effectiveness established by La.R.S. 40:1299.40 presupposes *745 that all known risks associated with the surgery are disclosed in the medical consent form. The defendant, Dr. Neu, failed to disclose the material risk of endophthalmitis in the consent forms. Endophthalmitis is a known risk associated with cataract surgery.
Moreover, the risk of endophthalmitis is separate and distinct from the risks of "loss of sight" and "loss of function of an organ." Because endophthalmitis is a different risk, it should have been disclosed in the consent forms. Nonetheless, the risk of endophthalmitis was not disclosed in either of the consent forms signed by the plaintiff. Consequently, the signed consent forms are not presumptively valid or effective under La. R.S. 40:1299.40.
Furthermore, we find material issues of fact concerning plaintiff's physical capacity to read the consent forms. The plaintiff asserts that she was unable to clearly read the "fine" print of the forms due to her impaired eyesight. Arguably, the plaintiff's poor eyesight constitutes a "peculiar circumstance" which precludes her comprehension of the consent forms and vitiates her informed consent. Hondroulis, 553 So.2d 398.
Additionally, there is dispute as to whether the defendant verbally disclosed the risk of endophthalmitis to the plaintiff. Ms. Guidry alleges that Dr. Neu did not inform her of the risk of endophthalmitis at any time prior to the surgery. Dr. Neu testified in her deposition that she usually discusses the risks of cataract surgery with her patients during preoperative visits. However, at her deposition, Dr. Neu was unable to recount the specific details of her discussions with the plaintiff. Therefore, we conclude there are material issues of fact of whether or not the defendant, Dr. Neu, informed the plaintiff of the risk of endophthalmitis.
Even if we assume the defendant failed to disclose the risk of endophthalmitis, the plaintiff must establish a causal relationship between the physician's failure to disclose the material risk and the damage sustain by the patient. Hondroulis v. Schuhmacher, 553 So.2d 398. This causal link must be established to successfully prove a claim of lack of informed consent.
In determining the issue of causation, certain factors must be considered. These factors include "the condition of the patient at the time of the decision, the necessity for treatment, the seriousness of the undisclosed consequences, the likelihood of the consequences occurring and the measures available for the correction of the consequences, should they occur." Yahn, 639 So.2d at 268.
Based on the trial record, it is undisputed that plaintiff's development of endophthalmitis was a result of the cataract surgery performed by the defendant, Dr. Neu. It is also undisputed that plaintiff's loss of vision is the direct result of the bacterial infection, endophthalmitis. Nevertheless, as previously discussed, there are issues of material fact of whether Dr. Neu disclosed the risk of endophthalmitis to plaintiff.
There is also dispute about the necessity of the cataract surgery and the likelihood of the consequences occurring. The defendant argues that plaintiff's vision would have eventually deteriorated in the absence of the cataract surgery. The only alternative treatment available to the plaintiff was the cataract surgery. Conversely, the plaintiff asserts that a reasonable patient in her position would have foregone the surgery if the risk and consequences of endophthalmitis had been disclosed. The plaintiff contends that she would have continued the "conservative" treatment under the defendant's supervision in lieu of the surgery.
Further, there is dispute about plaintiff's physical condition prior to the surgery. The plaintiff, age 78 at the time of surgery, contends she was unable to read and fully understand the consent forms because of her poor eyesight. To the contrary, the defendants allege that plaintiff was able to read and comprehend the forms.
In sum, we hold that these disputed issues of fact warrant adjudication by a trial on the merits of the suit. The resolution of these issues is pertinent to the determination of causation.

IV.

CONCLUSION
In light of the aforementioned factual disputes, we conclude that there are issues of *746 material fact of whether the defendant, Dr. Neu, validly obtained the informed consent of the plaintiff. We find that the plaintiff sustained the burden of proving the existence of genuine issues of material fact which preclude the granting of summary judgment.
Based on the foregoing reasons, the judgment of the trial court is reversed and the matter is remanded for further proceedings. All costs are assessed to defendants-appellees.
REVERSED AND REMANDED.
AMY, J., concurs in the results.
NOTES
[1] As amended by 1997 La. Acts 483.
[2] See also Hondroulis v. Schuhmacher, 612 So.2d 859 (La.App. 4 Cir.1992) (analyzing the test for rebutting the presumption of informed consent, which was set forth by the Louisiana Supreme Court in Hondroulis v. Schuhmacher, 553 So.2d 398 (La.1988)).